848 F.2d 191
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Raymond HUBA, Plaintiff-Appellant,
v.
Hon. Timothy M. FLANAGAN, in his official capacity as
Administrative Judge of the Court of Common Pleas
of Cuyahoga County, Ohio, Division of
Domestic Relations; et al.,
Defendant-Appellees.
 No. 87-3259.
 United States Court of Appeals, Sixth Circuit.
 May 5, 1988.
 
 Before NATHANIEL R. JONES, MILBURN and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff appeals the judgment for defendant in this action challenging the constitutionality of Ohio's system for enforcing child support payments. For the reasons set forth below, we vacate the judgment in defendant's favor and remand for further proceedings in the district court.
 
 
 2
 Plaintiff, Raymond Huba, filed his original complaint in this case on March 15, 1985 in the United States District Court for the Northern District of Ohio. At that time, Huba and his wife were in the process of having their marriage dissolved. One of the issues that had been settled by the Hubas was that Mrs. Huba would have custody of the couple's two-year old child and Mr. Huba would pay an as yet undetermined amount of child support. In his complaint, Huba sought injunctive and declaratory relief against the enforcement of Ohio's newly-enacted provision for enforcing child support payments. That provision, which was to become effective on April 10, 1985, was passed as H.B. 614 and was eventually codified, in part, at Ohio Rev.Code Ann. Sec. 3113.21. See Amended Substitute House Bill 614, Sec. 1, 1984 Ohio Legis.Serv. 5-909, 5-913 (Baldwin).
 
 
 3
 H.B. 614 was a rather complex piece of legislation and amended several Ohio statutes dealing with the implementation and enforcement of child support orders by Ohio courts. Simply stated, H.B. 614 provided that, beginning in April 1985, Ohio courts having jurisdiction to issue child support orders would be required to issue, after a hearing, one of several specified orders ensuring that the financial terms of the support order would be satisfied. For instance, if the court determined at the hearing that the child support obligor was employed, the court was to issue an order requiring the obligor's employer to withhold from the obligor's personal earnings a specified amount for support in satisfaction of the support order and to continue the withholding at intervals determined by the court until further order of the court. Similar provisions allowed for the mandatory withholding of workers' compensation benefits if the obligor was not employed and was receiving such benefits, and for the mandatory withholding of funds on deposit in financial institutions. H.B. 614 provided that such mandatory withholding provisions would not be applicable in situations where both divorcing parents agreed to have the child support payments paid directly to the custodial spouse or to the Bureau of Support. In those situations, rather than a mandatory withholding order, the court would enter a "provisional order" which would be triggered only if the non-custodial spouse failed to pay the support due under the support agreement.
 
 
 4
 In his complaint, Huba challenged the constitutionality of H.B. 614 on a variety of grounds, but primarily on the ground that it violated the due process rights of non-custodial parents. Huba made essentially two due process challenges to the constitutionality of H.B. 614. First, he alleged that the bill's mandatory and provisional withholding provisions were not consistent with due process in that they permitted deprivation of a non-custodial parent's liberty interest without sufficient pre-deprivation procedures. Second, Huba alleged that the provisions regarding provisional withholding orders were not consistent with due process in that such orders were allowed to become operative without notice to the non-custodial parent and an opportunity to respond and without timely post-deprivation procedures. In addition to the due process arguments, Huba alleged that the bill violated the supremacy clause of the United States Constitution (Art. VI, section 2) in that it conflicted with the federal Child Support Enforcement Amendments of 1984, 42 U.S.C. Sec. 651 et seq. (1982 & Supp.III 1985). More specifically, Huba alleged that under the federal legislative scheme, wage withholding is authorized only when there is an arrearage in the obligor's child support payments. Since H.B. 614 allows for such withholding even when no arrearage exists, Huba asserted that the statute was in conflict with the applicable federal law and was, therefore, defective under the supremacy clause. Huba also alleged that H.B. 614 constituted a bill of attainder, created an irrebutable presumption in violation of the due process clause, impaired the right to contract, and violated the equal protection clause of the fourteenth amendment.
 
 
 5
 The case was assigned to the docket of Judge Lambros, and, on April 10, 1985, the State of Ohio was granted leave to intervene to defend the constitutionality of the legislation. About eighteen months later, on October 10, 1986, Huba filed a motion for leave to file a supplemental complaint. In that supplemental complaint, which was proferred by plaintiff and is part of the record on this appeal, Huba sought to challenge the constitutionality of H.B. 509 which amended, in large part, H.B. 614.
 
 
 6
 H.B. 509 was passed in May 1986 and was signed into law by the governor on June 18, 1986. See Amended Substitute House Bill No. 509, Sec. 1, 1986 Ohio Legis.Serv. 5-564, 5-574 (Baldwin) (codified in part at Ohio Rev.Code Ann. Sec. 3113.21 (Baldwin 1987)). That provision completely revamped Ohio's scheme for enforcing child and other support obligations. The bill, which became effective on December 1, 1986, combined child support and alimony payment procedures and child support and alimony order enforcement procedures. Under the new bill, courts are required to issue, in certain specified circumstances, one or more of seven types of orders to insure the payment of the support. Specifically, the bill requires courts to issue support payment orders in the following circumstances: 1) when the support order is issued if issued after December 1, 1986 (O.R.C. Sec. 3113.21(C)); 2) when there is a default in the payment of the required support (O.R.C. Sec. 3113.21(B)(3)); 3) when the support order is modified (O.R.C. Sec. 3113.21(B)(4)); or 4) upon the request of the obligor or obligee (O.R.C. Sec. 3113.21(B)(2)). The types of orders to be issued are similar to those that were issued under H.B. 614, including orders for the withholding of personal earnings, workmens' compensation benefits, and funds in accounts at financial institutions. See generally O.R.C. Sec. 3113.21(D). The new bill abolishes the authority of courts to issue provisional orders, and requires courts to follow the bill's procedures for support order enforcement in situations where an obligor, for whom a provisional order had been issued under H.B. 614, is in default on that order. Moreover, the bill requires any court that issued a provisional order prior to the effective date of H.B. 509, to terminate the provisional order on or before March 31, 1987 and, to the extent possible, to issue a sufficient number of support payment orders to provide for the full payment of the support obligation under the original support order.
 
 
 7
 In his supplemental complaint, Huba made many of the same constitutional attacks against H.B. 509 as he had made against H.B. 614 in his original complaint. He also added some new claims, including a claim that the new bill's procedures as to provisional wage withholding orders were not consistent with procedural due process in that the bill allowed such orders to become permanent wage withholding orders merely upon the request of the obligee and even if no arrearage existed in the support payments.
 
 
 8
 Huba's motion for leave to supplement his complaint was filed, as indicated above, on October 10, 1986. The record does not reflect that Judge Lambros ever ruled on that motion. Instead, on November 26, 1986, the court issued its opinion granting defendant's motion for summary judgment and dismissing the complaint. In its opinion, the court noted that Huba had requested leave to supplement his complaint to include an attack on the constitutionality of the H.B. 509 amendments, and, in the course of its discussion of the case, the court addressed some of Huba's specific attacks against H.B. 509. As mentioned, however, the court never ruled on plaintiff's pending motion to supplement the complaint.
 
 
 9
 At the outset of its opinion, the court indicated that Huba was not alleging that O.R.C. section 3113.21 had been applied against him in an improper manner, but rather was alleging that the statute, as amended by H.B. 614 and H.B. 509, was unconstitutional on its face. The court held that Huba had standing to make a facial challenge to the constitutionality of the provisional withholding system contained in H.B. 614 and H.B. 509 because, having elected to utilize provisional withholding, Huba had a legally cognizable interest in the manner in which the provisional withholding system was operated.
 
 
 10
 On the merits, the court concluded that the provisional withholding system of H.B. 614 was consistent with due process in that it provided notice to the obligor prior to activation of the provisional order and a prompt post-deprivation hearing to contest the propriety of the activation. The court also found that the H.B. 509 procedures were consistent with due process in that they too provided pre-deprivation notice and a prompt post-deprivation hearing. The court did not address any of the other attacks made by Huba against the constitutionality of the legislation.
 
 
 11
 After Judge Lambros denied plaintiff's motion to alter or amend the judgment, plaintiff filed his timely notice of appeal on March 20, 1987.
 
 
 12
 Subsequent to the filing of the notice of appeal, but prior to briefing in this court, the Ohio General Assembly, on two separate occasions, again amended O.R.C. section 3113.21. Specifically, on April 1, 1987, the legislature passed H.B. 164. See Amended Substitute House Bill No. 164, Sec. 1, 1987 Ohio Legis. Serv. 5-10 (Baldwin) (codified at Ohio Rev.Code Ann. Sec. 3113.21 (Baldwin 1987)). That bill, which became effective immediately, included some minor changes to O.R.C. section 3113.21, including the addition of a provision regarding the sufficiency of the findings needed to enable a court to issue an order in situations where the obligor is is default. See O.R.C. Sec. 3113.21(B)(3)(b)(iv) (Baldwin 1987). Several months later, O.R.C. section 3113.21 was amended again, this time by H.B. 231. See Substitute House Bill No. 231, Sec. 1, 1987 Ohio Legis. Serv. 5-506, 5-536 (Baldwin) (codified in part at Ohio Rev.Code Ann. Sec. 3113.21 (Baldwin 1987)). This bill was passed on July 6, 1987, and became effective on October 1, 1987. The amendments to O.R.C. section 3113.21 effected by H.B. 231 appear to be more substantively significant than those effected by H.B. 164, and may have some relevance to the due process concerns raised by Huba. We note that neither party to this appeal brought these recent amendments to the attention of this court.
 
 
 13
 The panel is unanimously of the view that the proper course in light of the recent amendments to Ohio's child support legislation is to vacate the judgment in defendant's favor and remand the case to the district court for further review. While we express no opinion on the matter, we recognize that the recent amendments may have mooted some of the arguments Huba raises against the constitutionality of the legislation. On remand, the district court will have the opportunity to evaluate Huba's claims as they relate to the statute in its current form and, at that time, can determine whether the most recent amendments have any impact on the merits of Huba's constitutional attack.
 
 
 14
 While the main ground for our decision is the recent amendments to the legislation, we note that a remand is also appropriate for a more technical, procedural reason. As mentioned earlier, Judge Lambros granted judgment in defendant's favor without ever ruling on Huba's pending motion to supplement his complaint. In our view, the lower court's failure to pass on the pending motion prior to granting defendant's summary judgment motion was an abuse of discretion requiring the judgment to be vacated and the case remanded under this court's recent decision in Marks v. Shell Oil Co., 830 F.2d 68 (6th Cir.1987).
 
 
 15
 In Marks, this court held that it was an abuse of discretion for a district court to dismiss a suit on the basis of the original complaint without first considering and ruling on a pending motion to amend. The court reasoned as follows:
 
 
 16
 Given the policy of liberality behind Rule 15(a), it is apparent that when a motion to amend is not even considered, much less not granted, an abuse of discretion has occurred. The court in Epsey [v. Wainwright, 734 F.2d 748 (11th Cir.1984) ] determined that unless the district court's reasons for dismissing the motions to amend were "readily apparent" the dismissal could not be sustained. 734 F.2d at 750. Because the district court did not consider the motion, we can discern no such "readily apparent" reasons here ....
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 Therefore, we hold that dismissal of the suit based upon the original complaint without first considering the motion to amend was an abuse of discretion. The district court should have evaluated Marks' motion in light of Fed.R.Civ.P. 15(a) and its liberal policy of amendment.
 
 
 20
 Marks, 830 F.2d at 69-70 (footnote omitted & emphasis added). Moreover, the Marks court indicated that its conclusion was not altered by the fact that the district court, in the course of its opinion, had addressed the claims raised in the proferred amended complaint:
 
 
 21
 The appellee also argues that the court considered the new claims raised in the amended complaint while dismissing the action. While the court does discuss the new claims, we find it curious that it would do so without first making the amended complaint (and hence the new claims) part of the court record by granting leave to amend. By not considering the motion to amend, the court effectively left the new claims de hors the record. That the court then discussed claims which were not yet properly before it only compounds the error.
 
 
 22
 In our view, the rationale in Marks is a further reason supporting our decision to vacate the judgment in defendant's favor and remand the case to the district court. Judge Lambros never ruled on Huba's pending motion to supplement his complaint. While he certainly addressed some of the new claims raised in the proferred supplemental complaint, those claims were, as in Marks, de hors the record.
 
 
 23
 For the foregoing reasons, the judgment in defendant's favor is VACATED and the case is REMANDED for further proceedings not inconsistent with this opinion.